15  177
48  242

15  177
52  935

## James Davis v. Isaac Stern.

In cases of fraud and simulation parol evidence may be introduced by third persons, to contradict, or vary the contents of written instruments.

Conversations or admissions of the parties implicated in the fraud or simulation, may be offered by creditors, the objection to such evidence going to the effect or weight of it, when the declarations are not made in the presence of the other party.

Where a sale is clearly a simulated one, a subsequent as well as an antecedent creditor may treat it as a nullity.

APPEAL from the Third District Court of New Orleans, *Duvigneaud,* J.

C. V. *Jonte* and J. *Dunlap,* for plaintiff and and appellant. *Hiestand & Levy* and *Charles A. Taylor,* for defendant.

VOORHIES, J. The defendant, a judgment creditor of L. F. *Jonte,* levied upon property conveyed by the latter to *James Davis,* by public act dated the 9th day of December, 1856 ; hence the injunction suit brought by this party to prevent the sale of the property, which he claims to belong to him.

The defendant joins issue, on the ground of simulation, alleging that this act of sale is null and void, for want of consideration.

The Civil Code, Art. 2456, provides, that : " In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains possession by a precarious title, there is reason to presume that the sale is simulated ; and with respect to third persons, the parties must produce proof that they are acting in good faith, and establish the reality of the sale."

The evidence shows, in the case at bar, that the vendor, *L. F. Jonte,* continued to reside on the premises sold, up to the date of seizure ; but the plaintiff contends that it was by virtue of a contract of lease executed by him in favor of his vendor, on the next day after the sale. If the contract of lease be not a precarious title, the above quoted Article could not apply in this instance, unless the evidence disclosed the fact that the lease itself was a simulated affair. Of this, however, we are satisfied from the acts and conversations of the interested parties, and we agree with the District Judge, that the whole transaction was a simulation, and that it had never been contemplated by the parties, that the title to the property in question should vest in the plaintiff.

In order to arrive at this conclusion upon the question of simulation, we had to consider a portion of the evidence objected to, during the trial, by the plaintiff. His bill of exceptions states, that the District Judge improperly admitted parol evidence as to the contents of written documents, and the declaration of L. F. *Jonte,* in the absence of the plaintiff.

It is a well settled rule of law, that in all cases of fraud and simulation, parol evidence may be introduced by third persons, with the view of contradicting or varying the contents of written instruments. Indeed, this is the only mode in which they can exercise the remedy allowed to them, to set aside acts and documents injurious to their legal rights. And it is no less certain, that evidence of the conversations or admissions of the parties implicated in a fraud or simulation, may be offered on behalf of creditors, the objection going to the effect or weight of such evidence, when the declarations are not made in the presence of the other party. It is extremely difficult to prove simulation or to ferret out

23

fraud, and, but in rare instances, is it susceptible of positive and direct proof ; this is the reason of the relaxation of the rule of law, invoked by the plaintiff in this instance.

The fact that the plaintiff's title is a simulation, being conceded, it is necessary to dispose of two objections raised by him to the proceedings resorted to by the defendant in injunction.

The first objection is, that the latter should have resorted to a direct action of nullity, and not have seized the property at once.

This is untenable. There is a manifest difference between simulated sales and such as are made in fraud of creditors. The remedy, in the latter instances, is the revocatory action ; whilst in the other, the creditor may, at his option, institute the action " *en déclaration de simulation*," or proceed *via executiva.* There is an obvious reason for this distinction ; the revocatory action is predicated upon the illegally injurious effects of a contract, the reality of which is not questioned ; whilst in cases of simulation, there is no contract at all, but stipulations which are null and void, absolutely for want of sincerity. A simulated transaction can have no legal effect ; it is a non-entity. Hence the right of the creditors to proceed, *via executiva*, in all cases of simulated transfers. This doctrine has been expressly recognized in the following cases, to wit : *Simpson* v. *Mills & Cleveland*, 12 An. 173 ; *Erwin* v. *Bank of Kentucky*, 5 An. 1 ; *Emswiler* v. *Burham*, 6 An. 717.

In the case of *Erwin* v. *Bank of Kentucky*, the court said : " The distinction between a fraudulent contract and a mere simulation, has always appeared to us elementary. A contract is not the instrument of writing by which it is witnessed. L. C. 1755. It results exclusively from the consent, the *aggregatio mentium* of the parties to it ; and without such consent, no contract can exist. *Hiriart* v. *Roger*, 13 M. 129, and authorities there cited ; Merlin, verbo *Simulation*."

" We have repeatedly held, that the chapter of the Code regulating the revocatory action, is not applicable to cases of simulation, and that in those cases creditors may seize, notwithstanding the apparent transfer."

In the case of *Emswiler* v. *Burham*, the court expressed the same opinion, saying : " We adhere to the doctrine laid down in the case of *Erwin* v. *Bank of Kentucky*." And in *Simpson*'s case, reported in 12 An. 173, the same doctrine was recognized upon the authority of the previous cases quoted.

It is a matter of no moment whether the creditor's claim accrued previously or subsequently to the passing of a simulated deed. A simulated sale is an absolute nullity, and has never had, nor can ever have any legal effect. It cannot be the basis of prescription ; for it is not translative of property. The vendee's possession in such a case, is the possession of the debtor ; and the latter's creditor, whose rights or claims have accrued subsequently, are no more affected by this simulated deed than the debtor himself. It will not be de denied that the latter has the right to cause the simulated deed to be cancelled, upon the production of a counter-letter, or upon probing the vendee's conscience. C. C. 2236. Now there is this difference in favor of the creditor, that he may show the simulation, not only by counter-letter or by probing the vendee's conscience, but also by parol evidence and presumptions of law.

If, therefore, the debtor may at any time have a simulated deed declared a nullity, it follows, necessarily, that his creditor may do so, without reference to the date of his claim. This brings the question to a point ; if an antecedent credi-

tor has the right to proceed *via executiva* in cases of simulation, because of the unreality of the transfer, then for the same reason, ought the same privilege to be extended to a subsequent creditor.

It is, therefore, ordered and decreed, that the judgment of the District Court be affirmed.

LAND, J., dissenting.   The distinguishing fact of this case is, that the *defendant was not the creditor of the plaintiff's vendor at the date of the sale to him*, evidenced by a notarial act, and duly recorded—but became so several month's afterwards.

The principal question in this case is, whether or not the *future creditor* of the vendor can treat the sale as a nullity, on the grounds of *simulation* and *fraud*, and *seize* the *property conveyed* under the execution issued on his judgment as the property of the vendor.

In the case of *Hesser* v. *Black*, 5 N. S. p. 96, Judge Porter says :

" The proof adduced, shows, however, that the plaintiff in execution, did not become creditor until *years after the date of this conveyance* from the plaintiff's father, which is alleged to be fraudulent.   Under such circumstances, our *law only gave an action*, when it was proved that at the time of alienation the party alienating *had the intention to defraud the future creditor*.

The amendments lately made to the Civil Code, contain a positive provision, that creditors cannot annul a contract made before the time their debt accrues. C. C. 1988."

In the case of *Henry* v. *Hyde*, which was the case of a *future creditor who had made a seizure under a fi. fa.*, Judge Martin says :

" In *Richards* v. *Wallace et al.*, vol. 3, 338, we held, that if the sale to the plaintiff was fraudulent, *suit should have been brought to set it aside*.   The sale could not be treated by the defendants as a nullity, and the property sold as if no alienation had taken place."   5 N. S. 634.

In the case of *Morgan* v. *Davis*, Judge Porter says :

" If we consider the transaction in the only other point of view of which it is susceptible, namely, *that it was simulated and entered into for the purpose* of *defrauding creditors*, there is equally as fatal an objection to the plaintiff's right of recovery.   They do not show *they were creditors at the time the conveyance* was made."   4 La. 142.

In the case of *Brown* v. *Ferguson*, Judge Mathews says :

" The only question which remains to be settled, is whether those who were not creditors at that time, can legally claim the revocation and rescission of that sale, as fraudulent in relation to their rights.   On the *ground of simulation alone*, without *consequent fraud* on the rights of the creditors, it is believed that they would have no just claim to have the contract annulled, as between the apparent vendor and vendee.   It may be laid down as a general rule, that *acts* by which a debtor *alienates his property*, can only be considered *as fraudulent against creditors who are such at the time* of the alienation.   Yet future creditors may be considered as being injured by such alienations, and *have a right to cause them to be annulled*, if they were made *with the intention* to *provide the means of defrauding such creditors*."   4 La. 259.

It appears from these decisions that there is no difference between *simulated* sales and *fraudulent* sales, as to the right of future creditors to cause them to be set aside, and that in all cases, *the remedy of the future creditor is by an action of nullity*.

It also appears from these decisions, that the jurisprudence, upon the subject of the right of future creditors to annul contracts made at a time before their debts accrued, is the same under the present Code, that it was under the Code of 1808, and also under the Spanish and Roman laws.

I know of no authority or precedent to support the legality of the seizure made in this case—but on the contrary, the authorities are numerous, that the future creditor's only remedy is by action to annul the contract or sale.

It is, therefore, my opinion, that the injunction should be perpetuated, reserving to the defendant his action of nullity.

MERRICK, C. J., concurred in this opinion.