204 So.2d 142 (1967)
The NATIONAL BANK OF BOSSIER CITY et al., Plaintiffs-Appellants,
v.
Kenneth R. HARDCASTLE et al., Defendants-Appellees.
No. 10863.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1967.
Rehearing Denied November 28, 1967.
*143 Morgan, Baker, Skeels & Coleman, Shreveport, for National Bank of Bossier City.
Gallagher & Gallagher, Shreveport, for Shreveport Auto Finance Corp.
Hendrick, Fant & Sexton, Shreveport, for Kenneth R. Hardcastle, and others.
Cook, Clark, Egan, Yancey & King, Shreveport, for Commercial National Bank in Shreveport.
Before GLADNEY, AYRES and BARHAM, JJ.
BARHAM, Judge.
This is a revocatory action by two creditors of Willis H. Hardcastle, deceased. The defendants are the surviving widow of the deceased, Mrs. Ora Hopkins Hardcastle, the two sons of the deceased, Kenneth R. Hardcastle and Willis S. Hardcastle, and the Succession of Willis H. Hardcastle.
Plaintiffs allege that on October 30, 1964, the deceased transferred the only real estate he owned to his two sons; that one of the sons was a creditor of the deceased; that deceased was insolvent at the time of transfer; that the transfers were for the purpose of defrauding the creditors; and that the creditors were injured by the transfers. Plaintiffs urged that the transfers were simulations, and, in the alternative, that they were subject to a revocatory action. They have abandoned their claim of simulation and appeal from the lower *144 court judgment denying their right to revocation. Their suit for revocation is joined with an action to liquidate their debts as provided by LSA-C.C. art. 1975.
The two pieces of property involved in this action are the home of the deceased and a business lot upon which was situated a small office building and which was used in deceased's used car business. The stated consideration in the deeds was the assumption of mortgages. However, the sons delivered to their father approximately $1,600.00 as a part of the overall transaction. It is not disputed that the actual value received by the two sons exceeds the consideration which was paid for the properties. At the time of the transfer the deceased was recovering from a severe stroke, was, in fact, insolvent, was overdrawn approximately $800.00 at the plaintiff bank, and was unable to meet the monthly payment on the obligations assumed by the two sons.
It is the testimony of Kenneth Hardcastle that he and his brother had no knowledge of their father's business affairs and did not know that he was insolvent at the time of the transfer. They did know he was hard pressed temporarily for ready cash. Kenneth further testified that the motive for the transfer was to relieve their father of the monthly obligations attendant upon the mortgages they assumed, and to provide for his immediate need of cash. Mrs. Hardcastle attests to the fact that the family had no knowledge of the business situation of the deceased. None of the defendants participated in the operation of deceased's business at any time.
The claim of the plaintiff, The National Bank of Bossier City, is predicated upon an unsecured promissory note for $2,500.00 dated May 11, 1964. The claim of the plaintiff, Shreveport Auto Finance Corporation, is founded upon several notes secured by chattel mortgages representing a total debt of $12,733.03 after applying credits to the original indebtedness of $25,077.50.
The revocatory action in Louisiana is established by LSA-C.C. art. 1970 et seq.
LSA-C.C. art. 1971:
"This action can only be exercised when the debtor has not property sufficient to pay the debt of the complaining creditor, or of all his creditors where there has been a cession, or any proceeding analogous thereto."
LSA-C.C. art. 1978:
"No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If made in good faith, it can not be annulled, although it prove injurious to the creditors; and although made in bad faith, it can not be rescinded, unless it operate to their injury."
LSA-C.C. art. 1993:
"No creditor can, by the action given by this section, sue individually to annul any contract made before the time his debt accrued."
The prerequisites for the revocatory action are: (1) insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditors; (4) pre-existing and accrued indebtedness. See the discussion of the revocatory action in Louisiana in 9 Tul.L.Rev. 422.
The defendants contend that the Shreveport Auto Finance Corporation debt was not pre-existing because of a refinancing maneuver which occurred after the transfer. Without a lengthy discussion as to the merits of this argument, we simply conclude that the debt was such as was "accrued" and which would give rise to an action for revocation when liquidated.
*145 Appellants strongly urge that Kenneth Hardcastle, one of the defendants, is a creditor and that the presumption of fraud contained in LSA-C.C. art. 1984 should apply.
LSA-C.C. art. 1983:
"But if such fraud consisted merely in the endeavor to obtain a preference over other creditors, for the securing of payment of a just debt, under circumstances in which by law the endeavor to obtain such preference is declared to be a constructive fraud in such case the party shall only lose the advantage endeavored to be secured by such contract, and shall be reimbursed what he may have given or paid, but without interest; and he shall restore all advantages he has received from the transaction."
LSA-C.C. art. 1984:
"Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor."
Plaintiffs contend that a previous loan of $800.00 from Kenneth Hardcastle to his father should categorize him as a "creditor" under the above articles. However, the deeds do not in any way attempt to satisfy or cancel this obligation, and it is the positive evidence in the case that the transfers were not motivated by or made with any consideration for that obligation. We also conclude that the transferees did not, at that time, have knowledge of deceased's insolvency. Construing Articles 1983 and 1984 together, we are constrained to hold that Kenneth Hardcastle is not such a "creditor" as would give rise to the presumption of fraud. We hold that plaintiff is not relieved from the burden of proof in relation to all of the elements necessary to maintain a revocatory action.
That deceased was in fact insolvent is admitted. However, neither the creditors who complain nor the sons who purchased the property had real, factual and actual knowledge of the insolvency until after his death. Mr. Ashworth, Secretary-Treasurer for the largest creditor in this action, testified that his company did not consider the collection of deceased's indebtedness to be in "jeopardy" until several days after his death. He further testified that Mr. Hardcastle's financial reverses had existed for several months before the transfer; that other used car dealers were in similar financial straits; and that the loan to Mr. Hardcastle was secured as much by his "integrity" as it was by legal security devices. Upon the occasion of the renegotiation of Hardcastle's loan, which occurred after the transfers which are sought to be revoked, Ashworth was of the opinion that Mr. Hardcastle could solve his financial problems.
All of the testimony supports a finding by this Court that Mr. Hardcastle was a man of great integrity and that he would not and did not, in fact, act to defraud his creditors. The Court just as easily concludes that the sons of the decedent had no intent to defraud the creditors of their father by their purchase of these properties. Contrarily, it was their intent to assist their father in finding a solution to his financial problem. This was the single and only motivation for their acceptance of the transfers.
We could belabor this opinion with great detail as to testimony and in a comparison of cases involving the revocatory action. We simply cite cases and conclude that the factual situation in the instant case is far stronger for denial of the remedy than that which exists in any of the following: J. Grossman's Sons v. Chachere, 136 La. 666, 67 So. 545 (1915); Price v. Florsheim, 174 La. 945, 142 So. 135 (1932); Standard Plumbing, Heating & Supply Co. v. Dupree, *146 La.App., 157 So. 759 (1934); Hendricks v. Phelps, La.App., 62 So.2d 185 (2d Cir., 1952).
We conclude herein that although the deceased was insolvent in fact, and although the transfer did injure creditors who had pre-existing and accrued debts, that neither the transferor nor the transferees had any intent to defraud the creditors of the deceased, Willis H. Hardcastle. Under our conclusion the denial of the presumption provided by LSA-C.C. arts. 1983 and 1984 is of no consequence since we believe the defendants have so affirmatively countered the allegation of fraud.
The judgment of the district court is affirmed and appellant is taxed with the cost of this appeal.